Good morning ladies and gentlemen. Our first case of the morning is 11800 Hadley v. Subscriber Doe. Are you ready to proceed? Ready? Proceed. Good morning your honors. May it please the court, my name is Robert Fagan and I am here representing Subscriber Doe, the appellant in this matter, and we are asking this honorable court to reverse the second district appellate court and the trial court and to grant our motion to quash the subpoena and or to dismiss this matter. I'm aware of the fact that your honors have read the briefs and are familiar with the facts. However, because of the fact that we believe the statute of limitations is so central to the issues, I'd like to briefly go through the timeline of the case. The alleged defamatory comment was published on December 28, 2011 in a local paper, the Freeport Journal Standard. The case initially was filed on January 10, 2012, 13 days after the publication of the comment in the 15th Judicial Circuit and was in front of the honorable David Jeffrey. That case was initially entitled Bill Hadley v. State House Media Holdings Doing Business as the Freeport Journal Standard. State House Media Holdings removed the case to federal court. There was a motion to dismiss filed along with a motion to quash a subpoena that was filed and served upon Comcast Media Holdings in an attempt to identify who subscribed the media. Subscriber Doe was. Subscriber Doe being an individual who was assigned a certain IP address by Comcast. Judge Capalla dismissed the case with prejudice on July 10, 2012. A motion for reconsideration was filed three days later. We think it's rather telling that that motion was filed asking that the court reinstate the case solely for the purpose of allowing the magistrate judge to rule. Judge Capalla denied the motion for reconsideration on July 16, 2012, and he initially dismissed the case with prejudice as part of his ruling on the motion for reconsideration. He further clarified that the case was dismissed for failure to state a claim. So we believe it's fairly obvious that the dismissal with prejudice under Rule 12b-6 of the Federal Rules of Civil Procedure for failure to state a claim was not a dismissal for want of jurisdiction. Judge Capalla, an experienced and hardworking jurist, accepted the removal to begin with and then dismissed the case with prejudice. Well, excuse me. The same case was presented again to Judge Jeffrey in the 15th Judicial Circuit with a motion to reinstate. That case, I never appeared on that case at that time. The Gatehouse lawyers sent a letter to Judge Jeffrey, a plaintiff, a courtesy copy to me, suggesting that if Judge Jeffrey did decide to reinstate the original case, which again was Bill Hadley versus Gatehouse Media Holdings, that the case would be reinstated. And Judge Jeffrey denied the motion to reinstate and suggested that the best alternative the plaintiff might have was to file a new case. That new case was filed on August 7th of 2012, and that was entitled Hadley v. Doe, a.k.a. Foo Boy, whose legal name is unknown. On August, that was on August 7th. Did that case introduce the Rule 224? No, no, no, sir. Different time. It was purely a normal civil case with the litigants being Mr. Hadley, Bill Hadley, versus Subscriber Doe and Subscriber Doe, a.k.a. Foo Boy. And just to be clear, I represent Subscriber Doe in this matter, and I made an appearance representing Subscriber Doe, and with all due respect to the Second District, somehow that got transmuted into the fact that I represent Foo Boy. Foo Boy is unknown, and quite frankly, so is Subscriber Doe. That's why we're here. One of the key cases that has come to be part of this case, decided by this court, was decided on August 9th, two days after the new case was filed in the 15th Judicial Circuit, so it was pre-Santiago. The plaintiff issued another subpoena to Comcast, and Subscriber Doe, through me, filed a motion to quash that subpoena. I filed a special unlimited appearance, understanding that those no longer exist, but in these types of cases, I don't represent a party. I'm not really an intervener. We represent Subscriber Doe's First Amendment interests in remaining anonymous. The January 11th, we argued in that motion to quash that that case, Hadley v. Doe, was a nullity. It was void of initio, pursuant to this court's holding in Bogset, which we believe Santiago did not overrule. January 11th, 2013, the Circuit Court suggested to the plaintiff that what he wanted to do would be better addressed through a Rule 224 petition. This was after a series of arguments in which I was asked by the Circuit Court, after suggesting that there were avenues of redress in the Illinois Civil Law, which would provide plaintiff with the ability of discovering an unidentified party. I was then asked what those avenues were, and I responded by suggesting the Respondent Discovery Statute and Rule 224. Judge Jeffrey suggested that Rule 224 was the avenue to go with. On January 11th, January 24th, the plaintiff filed his amended complaint, amending what we believe was a nullity and added a count to, which was basically a Rule 224 petition. So now we had what the trial court characterized as a hybrid, because as this court is well aware, Rule 224, the plain language of Rule 224, contemplates an independent action to be filed prior to any substantive complaint. And it allows for the immediate appeal of the decision on that independent action. By doing what was done in this case, we end up with a basically procedural chaos, because on April 11th, the trial court denied the motion to quash. I filed a motion for reconsideration, because as I sat in my office, I wondered how I was going to explain to the Second District Appellate Court that there was a case or controversy existing in the trial court, but I was appearing in Elgin arguing Count 2 of that case or controversy. So by combining the substantive complaint with the independent action that should have been filed prior to the substantive complaint, I was running the risk of being sent back by the Appellate Court, because of the case or controversy that still existed in the trial court. So I asked the court to clarify what his ruling was. He clarified the ruling and suggested that it was a ruling on the 224 petition. That was great. That would mean that I'd have an automatically appealable issue under Rule 303. However, with the case or controversy still existing in the trial court, I was seeking a special finding under Rule 304. The trial court pretty much wanted to get this bumped upstairs, because I believe that the trial court recognized that there was some procedural irregularities here. That was based upon his determination that this was a hybrid. So he found that it was immediately appealable under 303, but in the alternative he issued a special finding under Rule 304. And that ended up being the reason, I believe, that Judge Burkett filed the dissent in the Second District, basically one of jurisdiction. I believe Justice Burkett found that this was not an immediately appealable issue. It was a discovery ruling and that this should not have come to the Second District when it did. So that's the timeline. We're here asking you to overrule the Second District Appellate Court and the trial court and their decision to deny our motion to quash. Beginning with approximately Goodkind v. Bartlett in 1894, through Bogseth v. Emanuel in 1995, a claim against a party whose identity is unknown has been found to be void, void ab initio and a nullity. What this is doing, Your Honors, is it's teeing up a discussion by your court regarding the interplay and the counterplay between Bogseth v. Emanuel and Santiago. Santiago, a case where the majority ruled that a plaintiff, Mr. Santiago, who filed his case under an assumed name, could go back after the statute of limitations had run and amend his complaint to provide his legal name. We believe that that case is distinguishable from this case because in Santiago, there was always an identified defendant. It was an entity. It was the E.W. Bliss Company. So that initial substantive complaint with a wrongly identified plaintiff who had submitted himself to the jurisdiction of the trial court had identified an actual entity, not a fictional entity, but an actual entity and that that identification had invoked the subject matter jurisdiction of the court and that even though the statute of limitations had run and even though other respondents that had been named were then named as parties, this court found that. Mr. Fagan, if this court finds that Fuboy is a fictitious name, what does that do to your argument? If it's a fictitious name, Judge, or a fictitious person. Fictitious name. It bolsters our argument because according to the common law, a fictitiously named party cannot be a suable entity in the state of Illinois. That's why we have the Respondent Discovery Statute and that's specifically why we have Rule 224. There is the statute which does allow 2-401 parties to appear anonymously with leave of court and that actually came in to some extent in Santiago because Mr. Santiago did not have leave to file anonymously. But based upon box set. Did you argue that Fuboy is a name that was chosen to preserve anonymity? That's part of your argument, isn't it? We didn't. Well, yes, that was how the commentator signed his comment, but we never linked Subscriber Doe and Fuboy. That was purely done by the plaintiff and that was done when he came in with his new case with the heading Hadley v. Subscriber Doe, also known as Fuboy, an entity who is unknown. We didn't do that, Judge. And there are no allegations in the complaint, no factual allegations in the complaint, which link those two anonymous entities. Subscriber Doe could be one person. Subscriber Doe could be the Freeport Public Library. Subscriber Doe could be an internet cafe. Subscriber Doe could be a lawyer's office with nine lawyers in it. Is this an alias or not? It's a placeholder. Subscriber Doe is the person that Comcast basically provided during the federal case to suggest that we do have a subscriber. He has this internet address. We've sent him a letter telling him that there's a federal subpoena and giving him ten days pursuant to federal law to come into the court and try to do something to quash that subpoena. Same thing happened in the state court when the plaintiff came in in August of 2012, filed his new case, Hadley v. Subscriber Doe, also known as Fuboy. And, again, that's the only link that we have between Subscriber Doe and Fuboy. And Fuboy might be one person or it might be several people commenting anonymously on the internet under that nom de plume. This issue of discovering the identity of an anonymous commentator has certainly been much litigated around the country. Absolutely. It is cutting edge, Judge. And here in Illinois we've had the Maxson case. Yes. This is Ottawa. My initial question and then a larger question. Do you agree with the Maxson case, what the standard is for when the court should order the discovery of the identity of the anonymous blogger, that being whether or not the allegations can withstand a 2615 motion? Yes and no. I think that it's a start, but as I suggest in my briefs, Your Honor, and as the Cahill Court, the Supreme Court of the state of Delaware, has found, cited by the plaintiff, that that standard is, quite frankly, designed to help balance the interests between a plaintiff who has a potential cause of action against the anonymous commentator and the anonymous commentator's First Amendment rights. I don't think, Your Honor, and as I've suggested in my briefs, that a motion to dismiss should be the specifically appropriate standard. I much prefer a 2619 motion, more motion for summary judgment, something beyond the four corners of the complaint. But you're suggesting that that issue, the kind of fundamental issue, has not been resolved in this state. No. Maxson has taken a position this court has not ruled on. Absolutely. So then my second question is. And if I could, Judge, just one more point, because I think it's very important. We're urging the court to find that in this specific type of case, because we're on the, if you're looking at a compendium of extremes, and the First Amendment right to anonymity, certainly a commentator on a political candidate in a political race is entitled to protection of anonymity under the First Amendment. We're suggesting that this court, as part of that 224 analysis, in this type of case, require the plaintiff, even if he is pleading per se, to come up with factual allegations on the harm. How has he been harmed? That is somewhat related to my second question, which is how do you think a plaintiff in such a case should proceed under 224? What's the proper procedure? In a political context? In any case. If there's, let's just say, a defamation case, the plaintiff is trying to sue an anonymous blogger. What's the correct procedure? Absolutely. File an independent action under Rule 224, including not only a request that a specific entity that may be able to identify the defamer be exposed to him. For example, in this case Comcast, there should be specific allegations on how that person is related to the case and how they have suffered damage. And obviously some allegations about the nature of the case, whether it's summary judgment or 2650. It basically should be the same type of allegations that would be in the complaint so that it would survive the standard, if we believe, of a summary judgment standard. Because, Judge, this case is a slap suit waiting to happen. And the only thing that a political candidate would have to do in order to find out who their opponents are and then exact some type of retribution would be to file a Rule 224, first of all file the Rule 224 petition, find out who it is that's complaining about them, and then do nothing. There's nothing that suggests they then have to go in and continue on with a defamation suit. And in this case, Judge, especially in the context of a political campaign, Mr. Hadley was elected. Not only was he elected, but his contemporaries then elected him chairman of the county board. So we don't know how he would be able to prove any type of damage in this case. And that's why I believe in the federal case, it was telling that when the district court judge dismissed the action, the plaintiff came in with a motion for reconsideration which basically said, we don't have a problem with Your Honor's dismissal of the substance of action. We would just like you to reinstate the case long enough so that the magistrate judge could rule on the issue of the motion to quash the subpoena. In reality, Judge, the plaintiff wants to know who made the comment. He doesn't really want to proceed with a defamation case to completion because, and that's the other reason, Judge, Your Honor, as you know, most defamation cases that have a defamation per se count have an alternative pleading with a defamation per quad count. That's not the case here because he couldn't come up with damages. So by pleading just the defamation per se with the presumption of damages, he gets around that. Thank you, counsel. Thank you. May it please the court, it's morning. I'm Andrew Smith. I'm counsel for the appellee, Bill Hadley, who is actually present in court in the gallery. Also present is Ronald Barch from my law firm who is my court co-chair, or in this case to make sure I made it, he'd be here if I didn't. There's a few things that need to be added to counsel's recitation of the procedure in this case. He is correct that within a couple of weeks of this statement being posted on the Freeport General Standards website by a person using the pseudonym F. Uboy, that we, in fact, proceeded into court, my client and I, on a miscellaneous remedies action in state court requesting that a subpoena issue to the Freeport General Standards so we could learn the name of the person who had access to their website who was using the name F. Uboy. We did that, and it turns out in their response to the subpoena that F. Uboy had actually used another totally anonymous name and address to be able to gain access to that website. So that was the failure from the beginning. We followed the law. We did a miscellaneous remedies action, did a subpoena as required by law, and that's why we couldn't find out because F. Uboy had used a different name of a non-existent person to gain access to the website apparently to be able to post such comments. As a result of that, not being able to learn who the prospective defendant was, we then filed an amended miscellaneous remedies action adding contest so we could continue on in that case because I'm sure your honors know once a miscellaneous remedies action is taken and the relief requested is granted, it basically ends the case. So we proceed that way. Again, totally within established, well-settled bounds of the law. We then proceeded in adding Gatehouse Media, which is the owner or was at the time of the Freeport Journal Standard where this comment was posted on the website. We then requested the court or issued a subpoena to Comcast because we had been informed that they were the Internet service provider, and the Fuboy had used to gain access to the website, which we did. Second subpoena. Then Gatehouse, because we've added them as a party, based on diversity jurisdiction and the amount of controversy, appeals to federal court. Again, fine. Everybody's following the law here. After which we request aid and discovery under the federal rules of the federal magistrate judge, Michael Mahoney, granted that motion in part allowing the subpoena to issue and requiring then Comcast to preserve the name and address of the subscriber, the Internet subscriber who had access, who used the name Fuboy to post the defamatory comment. Which time Gatehouse then filed its motion to dismiss in federal court. Counsel then enters an appearance on behalf of that very same person, not a non-existent person, a person who in fact posted this defamatory comment about my client and used the name Subscriber Doe. Counsel of record entered their appearance on behalf of an individual who was identified as Subscriber Doe. So now we've got three different names that Fuboy has decided to use. He used the fake name to get access to the Freeport Journal-Standard's website, Fuboy, and Subscriber Doe. He is correct. Ultimately, the federal district court, Judge Capalla, dismissed the case against Gatehouse Media, claiming that since it was an Internet service provider, it was immune under the federal act, and therefore the case was dismissed. All due respect for Judge Capalla, who I law clerked for and also practiced before for many years, I think he got it wrong because I don't believe Journal-Standard, Freeport Papers, Internet access provider. However, I respect his decision. That's what it was. So then we proceed back to state court. Filing against is the complaint shown on the record. Subscriber Doe, which is the name his counsel used when he entered his appearance in federal court, a.k.a. Fuboy, who was clearly the same person. So we used the two names they had chosen to use. This isn't a case where, let's say, a person gets in a traffic accident, goes into a coma, potentially has a wrongful death action later, is taken to an emergency room at Rockford Memorial Hospital, doesn't know who the person is, numerous treaters, so the plaintiff, in order to make sure they file within the statutory limitations period, files against Rockford Memorial because we all know they were taken there, and numerous Dr. John Doe's and Dr. Jane Doe's. No, we didn't use Doe. We used Subscriber Doe, but they chose to use a federal court action in state law and Fuboy, which is the name that same person used in making the statement. Then, hit and shoot with the court system. A few weeks later, counsel files his motion to quash the subpoena. Now, again, our complaint says Subscriber Doe and Fuboy, this time using the name Subscriber Jane Doe. So I'm not sure who to call them at this point. Otherwise, other than this, I know the same person who exists likes using different names and made this defamatory comment about the client. That's what we all know. That's the procedure, all of which was filed within the one-year statute of limitations for defamation action. There is no question that we're not here to change the law. My client and I are strong advocates of the First Amendment. We believe in free exchange of ideas and opinions, even in the political context. But there is no constitutional right to defame somebody. And counsel, Fuboy, Subscriber Jane Doe, Subscriber Doe, and whoever the name of the person was that gave the name to Freeport General Standard in the first place, there is no question that's an entity, an actual live person who has entered their appearance in both federal court and in state court. Fuboy is asking this court to turn the law upside on its head. They'll do respect to counsel in citing some of the cases. This court has never ruled that you can't proceed against a real person when they're using a fictitious name, when they're trying to hide and obstruct the This court has never done that. And I'm not aware of another high court in the state of Illinois having done that. Now, what this court has ruled, as Bogsap did, was... Is Fuboy a fictitious name, as you said now, or, as you suggested, I believe in your briefs, a generally known name? Or is there a difference? There may very well be a difference, Justice Thomas, as far as generally known in the public. But at that point, I guess my argument on that, as far as being generally known, that's the name they were using. And if you look at the case, that's the name they were using at the time this person made the statement. It is also a fictitious name in the sense of it's a nickname, I suppose. It's like calling me Andy instead of Andrew. I mean, that's the name they chose to use, not that we chose to use. That said, we proceeded against a real person. What this court has ruled, like Bogsap, is, for example, if I, as plaintiff, or attorney on behalf of plaintiff, sue ABC Company. And it turns out ABC Company doesn't exist. It's a corporation. That's how we sued it. And it turned out it was 123, Inc. Well, we're out. Because it's a nonexistent corporate entity. Is it essential to your theory of recovery that we maintain a remark, a distinction between a fictitious party and a fictitious name? Absolutely, Justice Garmon. I absolutely take that position. Obviously, you can't sue a fictitious entity. But you can sue an entity by the name they're using. The law says misnomer by statute. Misnomer does not defeat a claim. You can amend the pleading at any time. And believe me, assuming this court finds in our favor, as the trial court and appellate court did, we will certainly, at some point, amend the complaint to name F.U. Boy, Subscriber Doe, Subscriber Jane Doe, by their legal name. That would go without saying, as it would in any case. Because if we had a case where, again, we named ABC, Inc., and it turned out it was ABCD, Inc., and they entered their appearance on behalf of ABCD, Inc., and said, hey, we want this dismissed because ABC, Inc., is not an actual entity, fine to be dismissed, but then repled to name ABCD, Inc., as the actual defendant party in interest. It's the same thing. Versus you sue some entity that doesn't exist and never sued an actual entity within the statutory period or prior to the dismissal of that initial claim. So, yes, I think that is extremely important. And, in fact, Justice Carmire's concurring opinion, I think, clearly sets that forth in the Santiago case that this court ruled on, which clearly states there's a complete difference between a fictitious entity and a fictitious name. I mean, if that's the case, and I think counsel points us out in his brief, I mean, I suppose my client, and we've sued under Bill Hadley, who he's known by as the plaintiff, I suppose maybe it should have to be William and his middle name, I mean, his full legal given name at birth, and I don't think that's how this court would find him. And that's more the facts where the plaintiff in the Santiago case used a nickname. I can't even recall what the actual name they used, but it wasn't their full legal name that they sued under. But Justice Carmire clearly points out that it shouldn't matter, and it really shouldn't matter whether it's a defendant. This court has already found that you can as a plaintiff. Why should the plaintiff get to? Yet the plaintiff is precluded from proceeding against the defendant when it's the actual defendant in interest that's preventing the plaintiff from finding out what the legal name is of the defendant. And Justice Sorgenson, in her second district appellate opinion, discusses that very specifically. It would be fundamentally unfair for the court to allow that to happen. The other part of this is that you have this party in interest proceed in state court filing a substantive motion asking the case to be dismissed and is allowed to proceed anonymously. And there again, counsel F. Uboy, subscriber Doe, or whatever name they're going by this morning, is asking this court to turn the law upside down on its head. That has never been the law in Illinois. A non-party can't bring an action or file a substantive motion attacking a complaint in a legal proceeding. That would be like me. I'm walking down the street and I walk into the courthouse here locally and decide, even as an attorney, I'm just going to jump in on a case and start talking. You can't do that. You filed a substantive motion. And I would like to point out procedurally that motion that was filed was several weeks before he filed a special and limited appearance, which clearly states on the statute, and this court and every court in Illinois, I believe, has always held that if you're going to do that, you can only challenge the jurisdiction of the court over that particular person. It was after they had filed the substantive motion. They can call it whatever they want, a motion to quash, but it was under, I believe, 2615 or 2619, ignoring the fact that the law requires them to identify what section they're proceeding under, and that's never been required of this particular defendant. This court needs to make it clear that you can't proceed anonymously into court on a substantive motion. No one gets to it. What's different about this case? Now, Justice East, I think, asked Attorney Fagan about this particular issue, and I understand the concern about the First Amendment issue, but we're not trying to change that law. It may very well be that Rule 224 needs to be cleaned up with all due respect to your rule, but it may need to be clarified as to what the situation is, and part of the reason we're here is the other cases, like I believe Maxson, Guava, I think, was out of the 4th District just last year. Those cases, you had Comcast or you had the newspaper come in on behalf of the subscriber and challenge it, and a couple of appellate courts, I think this was the first time for the 2nd District, all decided that somewhere in 224 they found this, oh, you proceed under 2615. I'm not sure how we all got there, but here we are, and I agree with counsel. This court hasn't said how that's supposed to be proceeding on. It just seems like why in that case compared to any other case? Part of the reason we're now here is this is a situation where Comcast said, shit, we don't want anything to do with this. Clearly, they didn't want anything to do with this. We've now issued three, four subpoenas to them, and they haven't taken any position other than, well, we'll turn it over to you when we've got an order that says it. They haven't filed a motion. So here is obviously the dilemma in that situation, the way the appellate courts were finding you should proceed under 224, is you've got a person out there challenging it, a substantive motion, because the Internet service provider or the newspaper did not file such a motion on their behalf. And I would say to this court, it was well settled under Illinois law, if you're going to file something in an Illinois court attacking the merits of the case, you have to appear. You've submitted to the jurisdiction of the court, and therefore the anonymity goes away. And I don't know what exactly the rules should be otherwise, but the reality is we filed a valid defamation per se claim, in Illinois, within the statute of limitations period. Now, because of discussions throughout with the trial judge, and the trial judge decided, well, let's do this now. And that's really why we're here. The judge said, well, add in the rule 224. Well, either way you look at it, that would relate back to our initial cause of action, which has been already determined is a valid claim for defamation per se. For God's sake, they called my dear friend Bill a child molester for all intents and purposes. This man has had to endure this for three years, yet the defendant gets to be tied behind the cloak of anonymity and say, hey, we don't have to tell you. Yet we've had trial court and the appellate court in the state of Illinois say, yeah, come on, this is clearly defamatory per se. Go online anywhere, and this comes up. Not hard to do a Google search. My client, for the rest of his life, he's a young guy, the rest of his life he has to, any time a child, grandchild, niece, nephew, friend, or foe happens to go on the Internet, put his name in, and this comes up. Explain, no, F.U. boy was making this stuff up, and I'm not a child molester. Council likes to make a big deal out of this. Well, it's a small corner of the Internet. Well, the law only requires publication of one other person. This thing with the Internet is worse. It's just a different vehicle. Again, we're not asking the law to change. If I wrote on a piece of paper something defamatory and handed it to Justice Freeman, that's publication. If I mail it out to people, if I hand it out on the street, if I put it in an email, if I put it in a text, Twitter, tweeting, whatever all that stuff is, Facebook, it's just a different vehicle. Just like the newspaper. This doesn't change the law, if anything. It is more permanent and more damaging because so many people can get it. Given that, it's fundamentally unfair for council to stand up here at the NSA, which is not the law. Well, afterwards, he won anyway. Well, that's not the point. I mean, if that was the point, yeah, sure, in a month and a half ago, yeah, reelected county board chairman. What's that got to do with the price of tea in China? The reality is, it's at the time that he made the defamatory comment. And later on, procedurally, if we have to get in on what the damages are, that's not for this court to decide. And it's fundamentally unfair for council to come up here and even make reference to that because it's not appropriate for this court to even consider. That's not the issue. The issue is, was this language defamatory per se? And I posit, clearly it was. And second, was it published? No question about that. And in both instances, they're not even taking the position that it wasn't. And this whole red herring thing about, well, you know, it should get preceded anonymously, let's turn the law upside down, this is really a very simple case. Now, I know, and Justice Burkett quotes me from the trial court in his opinion, and he's absolutely correct. Again, but for Judge Jeffrey saying, oh, let's go into Rule 224, we wouldn't be here, and it should have been as soon as Judge Jeffrey found that we had a valid cause of action. They should have had to identify themselves as a defendant. Excuse me. Chief Justice, can I ask one more? You may. I'm just interested, since your time has run out, do you want to respond to Mr. Fagan's comment that it's a slap suit waiting to happen, that you're only concerned with the name, not really damages in a defamation action? Do you recall those comments? Yeah, I recall his reference to the slap shot suit, and I don't think this is the same type of situation. They haven't really argued that, so I can't sit here and quote the law and all that to you, but this isn't like some type of fishing expedition. Comcast said that one person had a private address. We're trying to find out who that person is, and even if that person is, oh, and you see all 12 people could have had access. Well, wait a minute then. At the very least, a subscriber is a material witness to the case and would have to identify themselves to say who had access to your Internet that day. So I don't think that... this isn't some fishing expedition. Comcast has clearly said it. It's a private residence. It's one-person subscriber. Now, later on, as an affirmative defense, if they say, hey, it wasn't me, okay, but they still have to identify themselves, Justice Thomas. That's my position. Thank you. Thank you. If I could just address the issue of whether or not this is one person at one private residence. Even if that does turn out to be the case, and I'm not admitting that it does, you can park in front of someone's house, and if they have an unprotected wireless network, the neighborhood can go through that IP address, and the subscriber might never know who it was that accessed the Internet through that subscriber's IP address. If that's so, though, why would the standard be to protect the identity of someone who has taken steps to basically protect their own network? Most people are... well, not most, because it's becoming more and more evident today, but if you go to any large neighborhood judge and just turn on your computer and look at all of the different networks that are available, you're going to find probably 10% of them that are unprotected. In point of fact, Comcast is doing it themselves. Every time you get a wireless access point from Comcast, which is both a modem and a wireless router, you have your protected network, but they have an open network which allows people that are wandering through the network to access the Internet through that wireless access point. And whether or not they're using it through your IP address or some other IP address, Comcast has never actually publicly announced. And what they're doing is they're providing wireless Internet throughout small communities and large communities by putting together all of their subscribers. Mr. Fagan, didn't you make the comment during your opening argument that they really weren't concerned about a defamation case? I did, Judge. They're more concerned about knowing who the person is, presumably for retribution or something to that extent? Yes, Judge. How would you know that? Well, I just take all of the specific innuendos and all of the parties involved. We have a Republican candidate for county board. We have the chairman at one point during this litigation of the Republican Party who's representing him. This is a political case, Judge, in a small town, specifically telling... But isn't it very likely, as Mr. Smith said, that someone that has a publication on the Internet that if we agree with counsel stood for the proposition that the plaintiff could be considered a child molester? Isn't it more likely that they're doing that to preserve their own integrity rather than to... At least as likely that they're looking for retribution rather they're looking for what the law provides to them in that instance? Judge, I go into this in much more depth in my pleadings. However, if this were a story about Mr. Hadley being a Cub Scout den leader, I think that, yes, there would be much more suggestion that this comment in that context would be a context suggesting that he was some type of child molester. This was a story about someone running for political office. And my arguments in the brief suggest that if you take the story itself, if you take the comments, the four comments, that were put below that story, and you take the entire context together with the fact this is an unregulated, unmonitored Internet chat room, if you do the analysis... the individual named Fuboy might have been trying to stir the pot, Judge. And the first comment suggested that this guy, meaning Mr. Hadley, has what it takes or knows what's going on. The second comment, which was by Fuboy, suggests that Mr. Hadley is not specifically what this, from a political standpoint, this story suggests. He is a Sandusky waiting to be exposed. And then if you take the entire comment in context, which includes the reference to the elementary school or the name of the street and the elementary school, you can see how absurd it is that based upon that comment and this story, how do you even come up with the fact that Mr. Hadley is potentially a child molester? It boggles the imagination, if I could, Judge. Citing Ohio v. Millers, or Ohio Millers, excuse me, Bogsat suggests that, and the common law suggests, that a proceeding buyer against a party by a mere fictitious name will be a nullity. This is in derogation of the common law. The Santiago case and the statute which allows someone to proceed anonymously is a very specific statutory authorization in derogation of the common law. The biggest difference between Santiago and Bogsat, in our opinion, Judge, is jurisdiction. In Santiago, you had a plaintiff who submitted to the jurisdiction of the court who cited a defendant who also invoked subject matter and personal jurisdiction of the court. Here, in this case, who do you serve? You have subscriber Doe, who is an anonymous entity at this point, and you have Fuboy, who is an anonymous entity at this point. And regardless of the conclusory allegations, those two individuals may be the same and may not be the same. We have no idea. Subscriber Doe and Fuboy. I represent subscriber Doe. Did you use both names in a pleading? No, I never did, Judge. The only way that this became subscriber Doe, a.k.a. Fuboy, was in the heading that was used in the complaint that was filed in August of 2012. Nowhere in any pleading did I suggest, in any way, that subscriber Doe and Fuboy are one and the same entity. We address judges. In our motion to quash, both Stone and Maxson established a standard that a circuit court judge is supposed to judge the allegations by. That is the 615 standard. That's why in our motion to quash and our memoranda in support, we addressed the 2615 standard. That got turned into a de facto motion to dismiss. We're not a party. We've never been served. In fact, quite frankly, subscriber Doe may or may not be the party in interest, the ultimate tortfeasor here. We don't even know, quite frankly, if the person that used the nom de plume Fuboy that made the comment is the same Fuboy that made the second comment. And quite frankly, I don't know how you could ever know that unless specifically subscriber Doe does know who Fuboy is. To show you the absurdity of this, Judge, Your Honors, at one point before we filed the motion to quash, the plaintiff asked the circuit court to allow the plaintiff to publish, in an attempt to try to get personal jurisdiction, over subscriber Doe. We didn't say anything about that because, quite frankly, we sat there and said to ourselves, go ahead. Get a judgment against subscriber Doe. How do you perfect it? Subscriber Doe is not identified. Anybody who uses a place name, Judge, whether it's a fictitional entity, as in Santiago, or excuse me, as in Bogseth initially, anybody who uses a place name is trying to find the ultimate party in interest. So regardless of whether it's a fictitious party or a real party or an anonymous name, you're really trying to find the ultimate party in interest. And subscriber Doe may or may not be able to identify the ultimate tort user here. Believe me, Your Honors, I do not envy you, your positions, because we are in the wired society now. And, quite frankly, everywhere you go, there are people who are having access to the Internet. And I point again to that Cahill case where the Delaware Supreme Court wrestled with these issues and decided that a motion for summary judgment standard was the way to go. They also, judges, suggested how ridiculous it is, putting into context how anybody could expect that an Internet unregulated chat group would be a place that you could find real facts about anyone. Thank you, Counsel. Time has expired. Case number 118000, Bill Hadley v. Subscriber Doe, et cetera, will be taken under advisement as agenda number 10. Mr. Fagan and Mr. Smith, we thank you for your arguments today. You're excused at this time.